1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

NICOLE K. OSBORN,                                         NO.  C10-274-RSL-JPD

10
                                   Plaintiff,

11
          v.                                              REPORT AND
                                                          RECOMMENDATION
12

13      MICHAEL J. ASTRUE, Commissioner of
        Social Security,

14
                                   Defendant.

15

16

17          Plaintiff Nicole K. Osborn appeals the final decision of the Commissioner of the Social

18      Security Administration ("Commissioner") which denied her applications for Disability

19      Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

20      of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

21      administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

22      the Commissioner's decision be REVERSED and REMANDED for further proceedings.

23                              I.       FACTS AND PROCEDURAL HISTORY

24          At the time of her administrative hearing, plaintiff was a thirty-three-year-old woman

25      with a high school education and nine months of technical training in office administration and

26      word processing.  Administrative Record ("AR") at 486-87.  Her past work experience

REPORT AND RECOMMENDATION - 1

includes employment as a fast food restaurant cashier, production assembly line cabinet maker, collections agent, and paraprofessional substitute at the Granite Falls School District.  AR at 60, 484-86.  Plaintiff was last gainfully employed as a secretary from January through March 2007.  AR at 460-61, 472-73.

Plaintiff asserts that she is disabled due to degenerative joint disease of the right knee following two arthroscopic surgeries for meniscal tears, as well as obesity and depression.  AR at 457, 463-66, 468-71.  Although plaintiff initially alleged an onset date of January 1, 2002, during her administrative hearing plaintiff amended her alleged disability onset date to January 10, 2003.  AR at 459.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 54-59, 432-36.  Plaintiff requested a hearing, which took place on April 20, 2009.  AR at 49, 455-91.  On May 13, 2009, the ALJ issued a decision finding plaintiff not disabled, and denied benefits based on his finding that plaintiff could perform jobs existing in significant numbers in the national economy.  AR at 11, 25.

The Appeals Council reviewed additional evidence submitted by the plaintiff, including an October 2009 declaration of plaintiff's treating physician Phillip Burk, M.D., but denied plaintiff's request for review.  AR at 4-7.  As a result, the ALJ's ruling is the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On February 22, 2010, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Osborn bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id*.  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.    DECISION BELOW

On May 13, 2009, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2.    The claimant has not engaged in substantial gainful activity since January 10, 2003, the alleged onset date.

3.    The claimant has the following severe impairments: obesity and degenerative joint disease of the right knee status post two surgeries for meniscal tears.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk for about two hours in an eight-hour workday with normal breaks.  The claimant can sit for about six hours in an eight-hour workday with normal breaks.  She can occasionally climb ramps and stairs, but should not climb ladders, ropes, or scaffolds.  The claimant should not kneel, crouch, or crawl.  She has no limitations with stooping.  The claimant has no manipulative, visual, communicative, or environmental limitations.

6.      The claimant is unable to perform past relevant work.

7.      The claimant was born on XXXXX, 1975[2] and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, I find that jobs exist in significant numbers in the national economy which the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2003 through the date of this decision.

AR at 16-25.

VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ err in evaluating the opinions of treating physician Phillip Burk, M.D.?

2.      Did the ALJ err in evaluating the opinions of examining physician Rodney Johnson, M.D.?

3.      Did the ALJ err in evaluating plaintiff's credibility?

4.      Did the ALJ err in evaluating the lay witness testimony of plaintiff's friend, Jennifer Smith?

Dkt. 12 at 1; Dkt. 13 at 2.

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

VII.   DISCUSSION

A.   The ALJ Properly Evaluated the Medical Evidence

1.   *A Rebuttal Declaration from a Physician that Does Not Provide Any New Medical Evidence Does Not Warrant Remand*

As a preliminary matter, the parties dispute whether this Court, in reviewing plaintiff's appeal, may properly consider medical evidence submitted to the Appeals Council which was not considered by the ALJ during the hearing. *See* Dkt. 12 at 5 n.5; Dkt. 13 at 2, 4; Dkt. 14 at 2. The ALJ held an administrative hearing on this matter on April 20, 2009. AR at 455-91. On May 13, 2009, the ALJ issued his opinion that is the subject of this appeal. AR at 12-26. As part of her appeal to the Appeals Council, plaintiff submitted additional evidence consisting of a declaration from Dr. Burk dated October 9, 2009, as well as a letter from plaintiff's attorney dated October 19, 2009. AR at 4-7. Obviously, the ALJ did not have an opportunity to consider this evidence. However, the Appeals Council considered it, made it part of the record, and concluded that these materials provided no basis for reviewing the ALJ's decision. AR at 4-7.

The law on evidence submitted for the first time to the Appeals Council is less than clear. The Commissioner cites *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001), in support of the proposition that Dr. Burk's October 2009 declaration should not be considered, arguing that plaintiff did not demonstrate good cause for failing to produce the evidence prior to the administrative hearing. *Mayes*, however, did not hold that to justify a remand based on new evidence, the claimant had the obligation to show good cause for having failed to produce the evidence at the time of the hearing. Instead, the Court held it was unnecessary to decide this specific issue because the plaintiff had conceded it was necessary. *Id.* at 461, n.3. Having conceded the issue, the Court stated "a claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied. To

1    demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable

2    earlier." *Id.* at 463.

3         On the other hand, the October 2009 declaration of Dr. Burk is already part of the

4    administrative record.  It was considered by the Appeals Council and made part of the record

5    when plaintiff sought review.  This action by the Appeals Council makes the declaration by Dr.

6    Burk part of the record before this Court.  *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir.

7    1993).  Thus, this Court will consider the entire record, including new evidence submitted for

8    the first time to the Appeals Council, in determining whether the ALJ's decision was supported

9    by substantial evidence.

10         Here, however, Dr. Burk's October 2009 declaration did not provide any new medical

11   evidence.  Rather, Dr. Burk's declaration simply attempted to rebut the ALJ's decision.  AR at

12   445-47.  A declaration from a physician that does not provide any new medical evidence does

13   not justify a remand.  Indeed, to conclude otherwise would undercut finality in the appeals

14   process by permitting every plaintiff to obtain a remand by getting his or her physician to

15   submit a declaration disputing the findings of the ALJ and submitting it to the Appeals

16   Council.  Moreover, as discussed further below, to hold otherwise would undercut the principle

17   that it is the ALJ, and not the physician, who is the ultimate arbiter on the issue of disability.

18   The Court declines to adopt such an approach.

19         In this case, the post-decision declaration submitted by Dr. Burk adds nothing material

20   to what was previously submitted in the April 2009 declaration that was considered by the

21   ALJ.  As a result, if the ALJ did not err in his assessment of Dr. Burk's April 2009 opinions,

22   there is no reason to remand this case to consider the supplemental declaration.

23              2.    *Standard of Review for Medical Evidence*

24         As a matter of law, more weight is given to a treating physician's opinion than to that

25   of a non-treating physician because a treating physician "is employed to cure and has a greater

26   opportunity to know and observe the patient as an individual."  *Magallanes*, 881 F.2d at 751;

*see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.  *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss*, 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  SSR 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion

may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

### 3. The ALJ's Treatment of the April 2009 Medical Opinions of Phillip Burk, M.D

Plaintiff contends that the ALJ improperly discounted Dr. Burk's opinions regarding the severity of plaintiff's degenerative joint disease in her right knee. AR at 428-31. Specifically, in his April 20, 2009 declaration, Dr. Burk testified that he is a Board-certified family practitioner who has been serving as plaintiff's treating physician since 2002. AR at 428-29. He testified that he diagnosed plaintiff with "chondromalacia, arthritis of her right knee" based upon "two MRI's we obtained on her knee" in 2005 and 2006. AR at 429. "The 2005 MRI shows tears in her cartilage," and the 2006 MRI "showed a tear in her lateral meniscus and severe degenerative changes in her knee." AR at 429. He asserted that "her chondromalacia is grade IV in terms of its severity . . . Grade IV is the most severe." AR at 429. He also noted that plaintiff would eventually need a knee replacement, although plaintiff was not a good candidate because of her young age. AR at 429. With respect to plaintiff's obesity, Dr. Burk said that it "significantly worsens her knee pain and her ability to sit, stand and walk for any significant length of time," as it increases "stress on the knee joint. . . ." AR at 430. Dr. Burk asserted that if plaintiff "were to perform any job where she had to sit, she would require an opportunity to elevate her leg. She would also need the ability every hour to get up and walk for a few minutes to keep her knee loose." AR at 430. As a result of her right knee and obesity, Dr. Burk opined that from January 2003 through the present, plaintiff has been unable "to do any type of full-time work, including sedentary work. . . ." AR at 430.

The ALJ rejected Dr. Burk's "characterization of the severity of the claimant's right knee condition" on the grounds that it "does not appear to be accurate." AR at 23. Specifically, the ALJ offered five reasons why he discounted Dr. Burk's opinion: (1) Dr. Burk's assertion that the 2006 MRI showed "severe" degenerative changes was not supported by objective

medical evidence, as the MRI revealed only mild osteoarthrosis and chondromalacia;

(2) treating orthopedic surgeon Dr. Beardsley characterized plaintiff's degenerative joint

disease as "mild to moderate in degree" in October 2006, which contradicted Dr. Burk's

diagnosis; (3) treating orthopedic surgeon Dr. Cartwright found that the 2005 MRI did not

reveal any chondromalacia patella; (4) Dr. Burk specializes in family practice rather than

orthopedics; (5) Dr. Burk's opinion that plaintiff is disabled is not binding on the ALJ; and

(6) Dr. Burk considered plaintiff credible and "compliant with treatment" although she failed

to diet or lose weight at her doctors' advice.  AR at 23-24.

Because the ALJ concluded that Dr. Burk's opinions were contradicted by other

physicians, this Court must determine whether the ALJ's express reasons for rejecting Dr.

Burk's opinion were specific, legitimate, and supported by substantial evidence in the record.

*See Reddick*, 157 F.3d at 725.  As discussed below, the Court finds that the ALJ's evaluation of

Dr. Burk's April 2009 opinions satisfied this standard.

a.      The 2006 MRI Revealed Mild Osteoarthrosis and
Chondromalacia

The ALJ found that Dr. Burk's assertion that the July 26, 2006 MRI showed "severe"

degenerative changes in plaintiff's knee was not supported by objective medical evidence

because "[i]n fact, the MRI from 2006 showed mild tri-compartmental osteoarthritis and mild

chondromalacia of the patella."  AR at 23; 311-12.  To reach this conclusion, the ALJ appears

to have compared Dr. Burk's assertion with the findings of George Elias, M.D., of the Everett

MRI & Diagnostic Center.  AR at 312.  Dr. Elias reported that plaintiff's 2006 MRI revealed

"mild tricompartmental osteoarthrosis" and "mild chondromalacia of the patella."  AR at 312.

Thus, the ALJ did not proffer his own "lay interpretation" of the 2006 MRI, as alleged

by plaintiff.  Inconsistency with objective medical evidence is a specific and legitimate reason

for the ALJ to discount Dr. Burk's opinion.  *See Bayliss*, 427 F.3d at 1216; *Lester*, 81 F.3d at

830-31.  *See also* Social Security Ruling (SSR) 96-2p ("It is an error to give an opinion

1   controlling weight simply because it is the opinion of a treating source if it is not well-

2   supported by medically acceptable clinical and laboratory diagnostic techniques or if it is

3   inconsistent with the other substantial evidence in the case record.").

4                  b.     Bryan J. Beardsley, M.D., Diagnosed Plaintiff's Degenerative

5                       Joint Disease as "Mild to Moderate in Degree" in October 2006

6        The ALJ also found that "Dr. Burk's state[ment] that the claimant had severe

7   degenerative changes of the knee based on his review of the orthopedic notes" was

8   contradicted by the most recent treatment note from Dr. Beardsley, an orthopedic surgeon who

9   performed arthroscopic surgery on plaintiff's right knee in February 2006.  AR at 24, 293-94.

10  Specifically, after meeting with plaintiff for five successive weeks in 2006 to treat her knee

11  pain with Hyalgan injections, Dr. Beardsley assessed plaintiff's "degenerative joint disease [as]

12  mild to moderate in degree" on October 31, 2006.  AR at 314.

13       In his October 2009 declaration, Dr. Burk pointed out that "[b]oth Drs. Cartwright and

14  Beardsley refer in their [2004 and 2006] operative reports to grade 4 chondromalacia.  The

15  interpretation of an MRI is not as sensitive or accurate as direct visualization during surgery."

16  AR at 445-46.  Dr. Burk is correct that Dr. Cartwright's operative notes from plaintiff's

17  arthroscopic surgery in May 2004 did identify some chondromalacia patella grade IV in

18  plaintiff's right knee.  AR at 222.  Dr. Beardsley's February 2006 operative notes also provide

19  that "the noted area of chondromalacia [by Dr. Cartwright] was identified."  AR at 258.

20  Specifically, Dr. Beardsley's notes explained that "this was grade IV chondromalacia in the

21  central portion although it did appear to be relatively small and not on the main weightbearing

22  portion."  AR at 258.

23       The Court cannot find, however, that the ALJ erred by affording greater weight to Dr.

24  Beardsley's October 2006 diagnosis, as the orthopedic specialist who "directly visualiz[ed]"

25  plaintiff's chondromalacia during surgery in 2006, as opposed to Dr. Burk's interpretation of

26  the surgeons' operative notes.  *See Andrews*, 53 F.3d at 1039 (providing that the ALJ is

REPORT AND RECOMMENDATION - 12

1 responsible for resolving conflicts in medical testimony).  Moreover, Dr. Burk admitted in his

2 October 2009 declaration that his diagnosis was primarily based upon his review of the

3 surgeons' operative notes rather than plaintiff's MRI's, as he had previously testified in his

4 April 2009 declaration.  AR at 445.

5               c.     Jeff Cartwright, M.D., Found that the 2005 MRI Did Not Reveal
6                      Chondromalacia

7        In addition to citing Dr. Beardsley's October 2006 treatment note, the ALJ referenced

8 the treatment notes of plaintiff's other treating orthopedic surgeon, Dr. Cartwright, who

9 performed arthroscopic surgery on plaintiff's right knee in May 2004.  AR at 222-23.

10 Specifically, the ALJ stated that "[p]reviously, on March 8, 2005, an orthopedic surgeon

11 reported an MRI showed no chondromalacia patella."  AR at 23.  Although it is true that Dr.

12 Cartwright noted that the 2005 MRI "did not reveal any evidence of chondromalacia patella,"

13 he also qualified this observation by stating, "but she certainly has symptoms consistent with

14 that also."  AR at 206.  Dr. Cartwright did not offer an opinion regarding the severity of

15 plaintiff's condition, but he noted that plaintiff reported symptoms such as swelling, instability,

16 and popping which seemed to originate underneath her kneecap.  AR at 206.

17        The Court finds the ALJ's statement about Dr. Cartwright's treatment note misleading,

18 as the ALJ ignores the fact that plaintiff also reported symptoms of chondromalacia.

19 Nevertheless, the Court cannot find that the ALJ erred in finding that Dr. Cartwright's

20 treatment note contradicted Dr. Burk's opinions.  Indeed, not only did Dr. Cartwright fail to

21 characterize plaintiff's condition as "severe," he noted that plaintiff rated the pain as only "a

22 three on a scale of one through 10."  AR at 206.

23               d.     Dr. Burk's Specialty is Family Practice Rather than Orthopedics

24        The ALJ noted that, unlike Drs. Beardsley and Cartwright, "Dr. Burk's specialty is

25 family practice rather than orthopedics."  AR at 24.  Plaintiff argues that "the ALJ failed to

26 appreciate, as Dr. Burk explained in his declaration submitted to the Appeals Council, that

1    treatment of [plaintiff's] combined impairments . . . was within his realm of expertise." Dkt.

2    12 at 8.  Under the regulations, however, the opinions of medical specialists are generally

3    given more weight than doctors who do not specialize in the relevant practice area.  20 C.F.R.

4    § 404.1527(d)(5) (2010) ("We generally give more weight to the opinion of a specialist about

5    medical issues related to his or her area of specialty than to the opinion of a source who is not a

6    specialist.").  In assessing the weight to afford to opinions of various treating physicians'

7    opinions, the ALJ properly considered their areas of specialization.  As a result, Dr. Burk's

8    specialty was a specific and legitimate reason for the ALJ to reject Dr. Burk's opinion

9    regarding the severity of plaintiff's knee condition in favor of the most recent diagnosis by Dr.

10   Beardsley, an orthopedist rendering an opinion related to his area of specialty.  AR at 24; 314.

11                  e.    Dr. Burk's Opinion that Plaintiff Is Disabled Is Not Binding On
12                        the ALJ

13        In an apparent response to Dr. Burk's assertion that plaintiff has been unable "to do any

14   type of full-time work, including sedentary work" since the alleged onset date, AR at 340, the

15   ALJ paraphrased Social Security Ruling 96-5p by stating that the "issue of whether the

16   claimant can work is reserved to the Commissioner and treating source opinions on issues

17   reserved to the Commissioner are never entitled to controlling weight or special significance."

18   AR at 24.  *See* SSR 96-5p ("the regulations provide that the final responsibility for deciding

19   certain issues, such as whether an individual is disabled under the Act, is reserved to [the

20   Commissioner]," and "treating source opinions on issues that are reserved to the Commissioner

21   are never entitled to controlling weight or special significance.").  Plaintiff argues that the

22   ALJ's statement reveals that the ALJ failed to give any "extra weight – [or] special

23   significance – to Dr. Burk's April 2009 opinions as those of a treating physician."  Dkt. 14 at 4.

24        The Court disagrees.  Here, the ALJ did not fail to treat Dr. Burk as a treating

25   physician, but simply pointed out that his opinions regarding the ultimate determination of

26   disability are not binding on an ALJ.  Even treating physicians' opinions as to some issues are

1    not medical opinions, but "instead, [constitute] opinions on issues reserved to the

2    Commissioner because they are administrative findings that are dispositive of a case; i.e., that

3    would direct the determination or decision of disability."  20 C.F.R. § 404.1527(e).  *See also*

4    *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a treating physician's

5    opinion is not binding on an ALJ with respect to the ultimate determination of disability).

6    Accordingly, the ALJ could properly reject Dr. Burk's opinion as to whether plaintiff is

7    disabled, and unable "to do any type of full-time work."  AR at 340.

8                      f.    The ALJ Erred by Questioning Dr. Burk's Medical Opinions
                            Based Upon Plaintiff's Failure to Lose Weight in Response to
9                            Doctors' Recommendations

10           The ALJ also appeared to evaluate Dr. Burk's credibility based upon a statement Dr.

11   Burk made regarding plaintiff's credibility.  AR at 24.  Specifically, the ALJ criticized Dr.

12   Burk's opinions because "Dr. Burk reported the claimant was compliant with treatment.

13   However, the claimant has basically ignored doctors' advice to lose weight.  Dr. Burk

14   acknowledged that the claimant's obesity significantly worsened her right knee pain."  AR at

15   24.  Dr. Burk also testified that he considered plaintiff credible.  AR at 431.

16           The Commissioner concedes that "if the ALJ had relied on her failure to lose weight in

17   assessing [plaintiff's] credibility, the ALJ may have erred," but argues that it was not improper

18   for the ALJ to discuss plaintiff's failure to lose weight in the context of evaluating Dr. Burk's

19   opinions.  Dkt. 13 at 14.  The Court finds the Commissioner's argument unpersuasive, as it

20   appears to draw a distinction without a difference.

21           An ALJ may consider a plaintiff's failure to follow treatment in an obesity case only

22   where a plaintiff has failed to follow prescribed treatment, and not simply recommended

23   treatment.  Social Security Ruling 02-1p provides that where an individual is disabled because

24   of obesity alone, or obesity in combination with other impairments, "there is no issue of failure

25   to follow prescribed treatment" if no treating source has actually prescribed treatment for the

26   obesity as opposed to simply recommending treatment for the obesity.  SSR 02-1p.  Moreover,

REPORT AND RECOMMENDATION - 15

1  "a treating source's statement that an individual 'should' lose weight or has 'been advised' to

2  get more exercise is not prescribed treatment."  SSR 02-1p.  Here, the ALJ did not find that

3  any of plaintiff's treating physicians actually prescribed treatment, as defined in the

4  regulations, to help plaintiff lose weight.  Rather, the ALJ appears to have evaluated plaintiff's

5  compliance with treatment in precisely the manner prohibited by SSR 02-1p, and then

6  criticized Dr. Burk's opinions on that basis.  The Court agrees with plaintiff that "it was just as

7  improper for the ALJ to reject Dr. Burk's opinions on [the] basis [of plaintiff's failure to

8  follow doctors' advice to lose weight] as it was to reject [plaintiff]'s statements on that basis."

9  Dkt. 14 at 8.  Plaintiff's failure to follow her doctors' advice to lose weight was not a

10  significant and legitimate reason for the ALJ to reject Dr. Burk's medical opinions.  *See also*

11  *Orn*, 495 F.3d at 638 (citing SSR 01-1p).

12                    g.       Conclusion Regarding Dr. Burk's Medical Opinions

13        In sum, the ALJ provided specific and legitimate reasons for rejecting Dr. Burk's

14  opinions regarding the severity and limiting effects of plaintiff's symptoms.  The ALJ could

15  reasonably afford greater weight to the medical opinions of treating physicians Drs. Beardsley

16  and Cartwright, as orthopedic surgeons who have operated on plaintiff's right knee, than the

17  opinion of treating physician Dr. Burk, a family practitioner who admittedly relied in part upon

18  the surgeons' operative notes.  AR at 445.

19        Although the ALJ erred by criticizing Dr. Burk's medical opinions for describing

20  plaintiff as "compliant with treatment" despite her failure to lose weight, at least with respect

21  to the ALJ's evaluation of the medical evidence in this case, this error is harmless.  *See* Dkt. 13

22  at 14.  *See also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Where the ALJ provides

23  a number of justifications for his decision, only one of which constitutes error, the Court must

24  determine whether the remaining legitimate justifications provide substantial evidence

25  supporting the ALJ's decision.  *See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190,

26  1197 (9th Cir. 2004).  The key issue is "whether the ALJ's underlying decision remains

REPORT AND RECOMMENDATION - 16

1  supported, in spite of any error, and not whether the ALJ would necessarily reach the same

2  result on remand." *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1163 n. 4 (9th

3  Cir. 2008). The ALJ provided several other specific and legitimate reasons for rejecting Dr.

4  Burk's opinion regarding the severity of plaintiff's condition, and these reasons were supported

5  by substantial evidence in the record. The ALJ did not err in his treatment of Dr. Burk's

6  medical opinions.

              *4.*     *The ALJ's Treatment of the August 2008 Medical Opinion of Rodney E.*
7
                      *Johnson, M.D.*
8

9        Plaintiff argues that the ALJ "did not adequately account" for the August 27, 2008

10  medical opinion of examining physician Dr. Johnson. Dkt. 12 at 7. Specifically, Dr. Johnson

11  evaluated plaintiff's right knee by performing a physical examination, ordering new x-rays,

12  and comparing the new x-rays with x-rays taken in 2006. AR at 350. He stated, "[w]e

13  repeated her x-rays today and from views taken in 2006 there is progression of osteoarthritis of

14  the knee involving particularly the lateral component. There is approximately 25-30% of the

15  joint space on the PA view. There is also patellofemoral arthrosis. This is progressive. It is

16  going to get worse." AR at 350. Dr. Johnson also stated that plaintiff "is unfortunately young

17  and overweight, and arthroplasty I do not think is a rational alternative. I talked to her about

18  the value of dieting, possibility consulting with bariatric surgery, and offered an Unloader

19  brace to see if that cannot help relieve some of her discomfort and improve her functionality."

20  AR at 350. In reviewing the medical evidence, however, the ALJ simply noted that "[o]n

21  August 27, 2008, Dr. Johnson reported x-rays showed a progression of osteoarthritis involving

22  the lateral compartment of the knee and patellofemoral arthrosis. The doctor noted this was

23  progressive and would worsen." AR at 22.

24        Plaintiff contends that the ALJ should have indicated how much weight he gave to Dr.

25  Johnson's opinions. Dkt. 12 at 7. Any error in this regard is harmless, however, as Dr.

26  Johnson's opinions, without more, would not support a finding of disability for the relevant

REPORT AND RECOMMENDATION - 17

time period.  *See Batson,* 359 F.3d at 1197.  Specifically, Dr. Johnson did not assess the severity of plaintiff's degenerative joint disease, aside from observing that it has "progressed" in severity since 2006.  AR at 18, 22.

        B.     The ALJ Erred in Assessing an Adverse Credibility Determination

A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen,* 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen,* 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722.  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ did not find that plaintiff was malingering.  The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence

and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 22. The ALJ offered three reasons to support this decision: (1) plaintiff's testimony regarding swelling and locking of her right knee was unsupported by objective medical evidence in the record; (2) plaintiff's daily activities were inconsistent with the level of impairment asserted; and (3) plaintiff was not compliant with treatment because she ignored her doctors' advice to lose weight. AR at 22-23. Plaintiff contends that these are not "clear and convincing reasons" for discrediting her testimony. Dkt. 12 at 9.

1.     *The ALJ Erred by Rejecting Plaintiff's Testimony Regarding the Swelling and Locking of Her Right Knee*

Plaintiff argues that the ALJ has not provided a clear and convincing reason, supported by substantial evidence in the record, for rejecting plaintiff's testimony that her right knee "regularly swells up and she has to elevate her leg four to five times a day for 30 to 45 minutes each time." AR at 22. Based upon the record before this Court, the Court agrees with plaintiff.

In the ALJ's evaluation of plaintiff's credibility, the ALJ found that "[a]lthough imaging has shown some progression of the right knee osteoarthritis/chondromalacia, the degree of debility the claimant has alleged is not supported by the objective evidence" because "her physical examinations usually showed no swelling." AR at 22-23. The ALJ pointed to six instances in plaintiff's medical records where plaintiff's knee was physically examined by doctors, but swelling was not reported. AR at 23. In addition, the ALJ cited Dr. Burk's April 2009 declaration as medical evidence confirming that plaintiff's swelling was not as severe as she alleged, because contrary to plaintiff's testimony "that Dr. Burk told her to elevate her leg due to swelling," Dr. Burk failed to "indicate that knee swelling was a problem" in his declaration. AR at 23.

The Court finds that the ALJ's rejection of plaintiff's subjective complaints regarding swelling of her right knee was not supported by substantial evidence. *See Carmickle*, 533 F.3d

REPORT AND RECOMMENDATION - 19

1    at 1162-63 (providing that an ALJ's ultimate credibility determination must be based on

2    substantial evidence in the record).  Specifically, the record contains numerous instances where

3    swelling of plaintiff's knee was reported.  AR at 22-23, 305-307, 309, 313, 351, 356, 359, 380,

4    389, 396-400.  For example, when Dr. Beardsley examined plaintiff's right knee on January 1,

5    2006, he reported that plaintiff was "positive for joint swelling."  AR at 359.  Thus, the ALJ's

6    assertion that "medical evidence does not support the contention that the claimant must

7    regularly elevate her right leg due to knee swelling" is not a clear and convincing reason,

8    supported by substantial evidence in the record, for rejecting plaintiff's subjective symptom

9    testimony.

10         Similarly, the ALJ did not credit plaintiff's testimony "that if she kept her leg straight

11   for too long her right knee locked and she had to use her hands to bend the knee . . . [as] this is

12   not described in the medical records."  AR at 23.  This finding by the ALJ is also unsupported

13   by the record, as plaintiff has previously reported stiffening or locking of her right knee on

14   several occasions.  *See Smolen*, 80 F.3d at 1282 (providing that a "claimant need not show that

15   her impairment could reasonably be expected to cause the severity of the symptom she has

16   alleged; she need only show that it could reasonably have caused some degree of the

17   symptom.").  For example, Dr. Beardsley's treatment note dated January 6, 2006, provides that

18   plaintiff reported her right knee "giving way as well as some locking, popping, catching."  AR

19   at 359.  In addition, although the ALJ relied upon Dr. Burk's April 2009 declaration in his

20   discussion of plaintiff's claim of knee swelling, the ALJ ignored it in his discussion of

21   plaintiff's claim of knee locking or stiffening.  Dr. Burk testified that "it is fair to say that

22   [plaintiff's] knee has enough cartilage damage that it is going to stiffen on her whenever she

23   holds it in any position for longer than 15 to 30 minutes, including sitting in a straight-backed

24   chair with her foot flat on the floor . . . She would also need the ability every hour to get up and

25   walk for a few minutes to keep her knee loose."  AR at 430.  Accordingly, the Court finds that

26

1   the ALJ has failed to provide a clear and convincing reason for rejecting plaintiff's testimony

2   regarding the locking or stiffening of her knee.

3                   2.      *The ALJ Did Not Err in His Assessment of Plaintiff's Daily Activities*

4           The ALJ also cited plaintiff's activities of daily living, including "driving, shopping,

5   preparing meals for her family, and caring for a seven-month-old infant during the day," as a

6   basis for finding plaintiff's testimony regarding the severity of her impairment less than

7   credible.  AR at 22.  In addition, the ALJ asserted that in 2005 plaintiff reported "performing

8   housework such as dishes, sweeping, vacuuming, and laundry."  AR at 22.  In sum, "[t]he

9   activities the claimant described are basically what one would expect for a stay-at-home

10  mother with two children."  AR at 22.  Finally, the ALJ stated, "I note that caring for an infant

11  is consistent with medium level work described in the <u>Dictionary of Occupational Titles</u>

12  ["*DOT*"] (Child Monitor, DOT # 301.677-101)."  AR at 22.

13          Plaintiff acknowledges that daily activities that are inconsistent with a plaintiff's

14  claimed level of impairment constitute a valid basis for the ALJ to draw an adverse credibility

15  assessment.  However, she argues that the ALJ's decision in this case was not supported by

16  substantial evidence, and that the ALJ's citation of the *DOT* constituted improper reliance upon

17  extra-record evidence.  Dkt. 12 at 9-11; Dkt. 14 at 7.  The Commissioner responds that

18  plaintiff's daily activities were "inconsistent with her alleged limitations during the period of

19  alleged disability," and the regulations put plaintiff on notice that the ALJ may consult the

20  *DOT* in his decision.  Dkt. 13 at 12-13; *see* 20 C.F.R. § 404.1560(b)(2) ("We may use the

21  services of . . . the 'Dictionary of Occupational Titles' and its companion volumes and

22  supplements, published by the Department of Labor, to obtain evidence we need to help us

23  determine whether you can do your past relevant work, given your residual functional

24  capacity.").

25          The Social Security Administration has taken administrative notice of the *DOT*, which

26  is published by the Department of Labor, and routinely relies upon it in determining the skill

REPORT AND RECOMMENDATION - 21

1    level of a claimant's past work, and in evaluating whether the claimant is able to perform other

2    work in the national economy.  *See Massachi v. Astrue,* 486 F.3d 1149, 1152 n.8 (9th Cir.

3    2007); *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  *See also Villa v. Heckler,* 797

4    F.2d 794, 798 (9th Cir. 1986) ("The Secretary may rely on the general job categories of the

5    [*DOT*] . . . as presumptively applicable to a claimant's prior work."); 20 C.F.R. §

6    404.1566(d)(1) (*DOT* is the Secretary's primary source of reliable job information); 20 C.F.R.

7    § 404.1569 (*DOT* classifies jobs by their exertional and skill requirements).  The Court agrees

8    with plaintiff, however, that these regulations do not put plaintiff on notice that the ALJ may

9    use the *DOT* to evaluate a plaintiff's credibility in this context.  Indeed, the level of exertion

10   involved in caring for plaintiff's own children at home may differ markedly from that required

11   to work as a full-time professional child monitor.  The ALJ's reference to the definition of

12   "child monitor" in the *DOT* in his credibility analysis was therefore inappropriate.

13        Although the ALJ erred by citing to the *DOT* in this context, this error was harmless

14   because the Ninth Circuit has held that an ALJ may properly consider a plaintiff's "daily

15   activities, such as attending to the needs of her two young children, cooking, housekeeping,

16   laundry, shopping" as evidence that is inconsistent with a claim of disability.  *See Rollins v.*

17   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Thus, citation of plaintiff's daily activities,

18   including her efforts to care for her two children, constitutes clear and convincing reasons to

19   challenge plaintiff's credibility.  *See Reddick*, 157 F.3d at 722.

20               3.    *The ALJ Erred by Relying upon Plaintiff's Failure to Lose Weight in His*

21                     *Credibility Determination*

22        Plaintiff next argues that pursuant to the Ninth Circuit's decision in *Orn* and Social

23   Security Ruling 02-1p, the ALJ erred by finding plaintiff not credible based upon her failure to

24   lose weight.  Dkt. 14 at 7-8.  Plaintiff also argues that this error was not harmless because it

25   was central to the ALJ's credibility analysis.  The Commissioner argues that the ALJ did not

26   consider plaintiff's failure to lose weight in evaluating plaintiff's credibility, although he

1    concedes that "if the ALJ had relied on her failure to lose weight in assessing credibility, the

2    ALJ may have erred."  Dkt. 13 at 14.

3          The Court finds the Commissioner's argument unpersuasive.  AR at 23.  As the

4    plaintiff points out in her reply brief, the ALJ referenced plaintiff's failure to lose weight in his

5    evaluation of plaintiff's claims concerning "the intensity, persistence, and limiting effects" of

6    her knee pain and obesity.  Dkt. 14 at 8.  Specifically, the ALJ asserted that "[d]octors have

7    repeatedly advised the claimant to lose weight, which she has not done.  At the hearing she

8    testified that she thought she had lost weight, but stated she weighed 320 pounds.  This is the

9    most she has weighed based on the medical records . . . I note that the claimant's right knee

10   symptoms would improve if she heeded doctors' advice to lose weight."  AR at 23.

11         Use of these findings by the ALJ to form an adverse credibility determination is

12   improper under the Ninth Circuit's decision in *Orn* and Social Security Ruling 02-1p.  *See*

13   *Orn*, 495 F.3d at 635-36 (holding that an ALJ erred by citing a claimant's failure to follow

14   doctors' recommendations to lose weight as a basis for questioning the claimant's credibility

15   where "there is no evidence that [the plaintiff] was directed to lose weight as part of a

16   prescribed treatment, or 'clear evidence that treatment would be successful.'").  Here, the ALJ

17   did not find that any of plaintiff's doctors prescribed treatment for her obesity.  Thus,

18   plaintiff's "failure to follow treatment for obesity tells us little or nothing about [her]

19   credibility."  *Id.* at 638.  The ALJ erred.

20                    *4.    The ALJ's Errors Were Not Harmless*

21         Because two of the ALJ's reasons supporting his adverse credibility assessment are

22   invalid, the issue is whether the errors can be excused as harmless error.  *See Batson v. Comm'r*

23   *of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (applying harmless error standard

24   where one of the ALJ's several reasons supporting an adverse credibility finding was held

25   invalid).  The *Batson* case provides that so long as there remains "substantial evidence

26   supporting the ALJ's conclusions on . . . credibility" and the ALJ's error "does not negate the

REPORT AND RECOMMENDATION - 23

validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. *Id.* at 1197; *see also Stout*, 454 F.3d at 1055 (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination").

Here, the Court cannot conclude that the ALJ's adverse credibility assessment is valid. The ALJ's discussion of plaintiff's credibility in this case focused significantly on plaintiff's failures with respect to dieting and losing weight. The ALJ relied upon the fact that "the claimant has basically ignored doctors' advice to lose weight" in his assessment of plaintiff's credibility. AR at 23.

Similarly, the ALJ's rejection of plaintiff's subjective symptom testimony concerning the swelling and locking of her right knee was also material to the ALJ's ultimate nondisability determination. During the hearing, the vocational expert testified that if an individual needed to frequently alternate between sitting and standing, and elevate their legs above their heart "throughout the day four to five times 45 minutes each," as plaintiff testified, that individual would not be able to perform even sedentary work. AR at 489-90. Under these circumstances, the Court cannot find that the ALJ's errors were inconsequential to the ultimate nondisability determination. *See Stout*, 54 F.3d at 1055. *See also Carmickle*, 533 F.3d at 1162-63 (providing that an ALJ's ultimate credibility determination must be based on substantial evidence in the record).

Accordingly, this case will be remanded for further findings evaluating the credibility of plaintiff's subjective complaints. On remand, the ALJ should reassess plaintiff's credibility in light of the direction provided by this opinion.

C.      The ALJ Erred in His Assessment of Jennifer Smith's Lay Witness Testimony

Plaintiff argues that the ALJ improperly evaluated the lay witness testimony of her friend, Jennifer Smith. Dkt. 12 at 11. Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be

1    disregarded without comment.  20 C.F.R. § 404.1513(d); *Dodrill v. Shalala,* 12 F.3d 915, 919

2    (9th Cir. 1993).  If an ALJ wishes to discount the testimony of a lay witness, he must provide

3    reasons germane to each witness.  *See Shalala*, 12 F.3d at 919.

4              During the administrative hearing, Smith testified that she did not think plaintiff could

5    work due to "chronic pain and swelling in her knee," as well as difficulty sitting, standing, and

6    walking.  AR at 479.  Smith reported that she has observed plaintiff suffer from knee pain, and

7    has observed substantial swelling in plaintiff's right knee.  AR at 479.  She also testified that

8    plaintiff would recline, elevate her knee "so that the swelling will reduce," and apply ice for 25

9    to 45 minutes, two or three times a day.  AR at 479-80.  Smith reported that she helps plaintiff

10   care for her children and complete household chores for several hours every day "to help take

11   the pressure off of [plaintiff]," who needs substantial assistance around the house.  AR at 481.

12   Finally, Smith opined that plaintiff seemed depressed.  AR at 482.

13             The ALJ rejected Smith's testimony on the grounds that "the medical records contain

14   virtually no mention of the depressive complaints with the exception of the November 2007

15   report from Dr. Burk and the consultative evaluation from Dr. Cloud.  The claimant did not

16   receive any counseling during the period at issue."  AR at 24.  Similarly, the ALJ rejected

17   Smith's testimony that plaintiff must regularly evaluate and ice her knee to reduce swelling

18   because "again, the medical evidence does not support the contention that the claimant must

19   regularly elevate her right leg due to knee swelling."  AR at 24.

20             Plaintiff contends that the ALJ's rejection of Smith's testimony based upon the lack of

21   corroborating evidence in the medical record was erroneous under the Ninth Circuit's decision

22   in *Bruce v. Astrue*.  557 F.3d 1113, 1116 (providing that an ALJ may not discredit "lay

23   testimony as not supported by medical evidence in the record.").  *See also Smolen*, 80 F.3d

24   1273, 1289 (9th Cir. 1996) ("The rejection of the testimony of [the claimant's] family members

25   because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR

26   88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's

REPORT AND RECOMMENDATION - 25

alleged symptoms are *unsupported* by her medical records."). The Commissioner concedes that pursuant to the Ninth Circuit's decision in *Bruce*, "to the extent the ALJ rejected Ms. Smith's testimony because her statements about Plaintiff's depressive symptoms were not supported by the medical record, the ALJ erred." Dkt. 13 at 15. However, the Commissioner asserts that this error was harmless because the ALJ also found that Smith's testimony regarding the swelling of plaintiff's knee was contradicted, rather than unsupported, by the medical evidence, and contradiction by medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218.

Contrary to the Commissioner's contention, the ALJ made no such distinction with respect to Smith's testimony that plaintiff must regularly elevate her right leg due to knee swelling. AR at 11. Rather, the ALJ summarily rejected Smith's testimony as unsupported by the medical record. This was not a germane reason for rejecting Smith's testimony. As a result, on remand, the ALJ is directed to reconsider, or at least further support, his findings with respect to Smith's lay witness testimony.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings consistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 6th day of October, 2010.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge